UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MEDICINE P.C.,

      Plaintiff,                                        Case No.  96-72624

v.                                                                Hon. John Corbett O'Meara

HORIZON/CMS HEALTH CARE CORP.,

      Defendant.

_____/

**OPINION AND ORDER GRANTING HEALTHSOUTH'S
MOTION TO SET ASIDE CONSENT JUDGMENT**

Before the court is non-party HealthSouth Corporation's motion to set aside the consent

judgment, filed October 17, 2008.  Plaintiff and Defendant's counsel, Butzel Long, filed

responses; HealthSouth submitted reply briefs.  Plaintiff and HealthSouth also filed supplemental

briefs.  No response was filed on behalf of Defendant.  The court heard oral argument on April

23, 2009, and took the matter under advisement.

**BACKGROUND FACTS**

Non-party HealthSouth Corporation seeks to set aside or dissolve the judgment in this

action.  In 1996, Plaintiff General Medicine, P.C., sued Horizon/CMS Health Care Corporation

for breach of contract.  General Medicine had a contract with Horizon to provide "medical

director" services to two nursing homes.  Horizon terminated the agreement "for cause" in 1996;

General Medicine then filed suit against Horizon.  In 1997, while the action was pending,

HealthSouth became the parent company of Horizon.  The case was stayed, then administratively

closed in 1999 while a criminal investigation was underway involving the operations of two

Horizon facilities.  HealthSouth, as a legal entity, was never a party in this action.

While the action was administratively closed, HealthSouth sold all of Horizon's stock to Meadowbrook Healthcare Corporation in 2001.  In the stock purchase agreement, Meadowbrook expressly assumed responsibility for defending this action.  Plaintiff alleges that the sale of Horizon to Meadowbrook was a sham designed to shed Horizon's liabilities while HealthSouth kept the valuable assets.  (Meadowbrook was headed by former HealthSouth executives, including Michael Martin, who served a prison term for his role in a HealthSouth accounting scandal.  Allegedly, Meadowbrook was formed with cash provided by HealthSouth, but had minimal assets.)

The criminal proceeding against Horizon concluded in 2002; General Medicine moved to reactivate this case on April 4, 2003.  According to the stock purchase agreement, Meadowbrook was required to defend this action and indemnify HealthSouth.  Meadowbrook terminated Horizon's defense counsel and contacted General Medicine's counsel on April 7, 2003, to propose a "poverty" settlement.  Shortly thereafter, Meadowbrook retained replacement defense counsel to settle the case.  The new counsel did not independently investigate Horizon's exposure, do any discovery, or consult any experts.  (He testified on deposition that he was retained for one purpose: to settle the case.)  The parties negotiated a settlement over several months.  The basic outline of the settlement was that a consent judgment would be entered against Horizon, but General Medicine would attempt to collect from HealthSouth (presumably based on allegations that Horizon did not have sufficient funds after being "looted" by HealthSouth.)

The parties entered into the settlement agreement on April 21, 2004.  The settlement

agreement was never filed with or otherwise presented to the court. In the agreement, Horizon agreed to pay General Medicine $300,000. Horizon also agreed to the entry of a consent judgment in "an amount to be determined prior to entry" with the express restriction that the consent judgment be used by General Medicine only to collect from HealthSouth, not Horizon.

On May 3, 2004, the parties presented a consent judgment to the court in the amount of $376 million. While other terms of the settlement agreement were presumably negotiated at arms length, the $376 million number was not. (Indeed, Horizon had no incentive to negotiate this amount, or any other amount, since it would not have to pay.) When the consent judgment was presented to the court, the parties did not present or describe in any way the "confidential" settlement agreement. HealthSouth was apparently unaware of the settlement agreement or the consent judgment.

Shortly after the judgment was entered, General Medicine filed an action in Alabama state court against HealthSouth, seeking to collect the amount of the consent judgment under the Alabama Uniform Fraudulent Transfer Act. Around the same time, Meadowbrook sold all of Horizon's assets to a third party "free and clear" of the consent judgment for $68.5 million and distributed tens of millions to its shareholders (thus demonstrating, according to HealthSouth, that Meadowbrook/Horizon could actually afford to defend this case, but chose not to, allowing Plaintiff to go after HealthSouth instead.)

HealthSouth contends that it did not learn of the settlement agreement and consent judgment in this matter until it was permitted to conduct certain discovery in the Alabama action in 2008. Shortly after that, it filed the motion now before the court.

## LAW AND ANALYSIS

-3-

**I.**     **Introduction**

It is important, first of all, to make clear what will <u>not</u> be decided here.  HealthSouth's

behavior, vis-a-vis the shareholders and the public, which resulted in criminal proceedings

against some of its officers, is irrelevant to these proceedings.  Also irrelevant is HealthSouth's

alleged movement or sale of assets and obligations to other parties.  Finally, HealthSouth's

motivation in its dealings with Horizon and Meadowbrook prior to the entry of the consent

judgment for $376 million is also irrelevant to the issues now before the court.

What we <u>do</u> decide here is whether the following scenario provides a basis under Rule 60

for the court to grant HealthSouth's motion: (1) Plaintiff and Defendant Horizon agreed to a

consent judgment of $376 million against Horizon and simultaneously agreed to allow $300,000

satisfy the judgment; and (2) subsequently, Plaintiff seeks to use the $376 million consent

judgment to establish a quantum of value due Plaintiff from <u>non-party</u> HealthSouth under

Alabama's fraudulent conveyance statute.  The court will determine, under these circumstances,

whether Federal Rule of Civil Procedure 60 gives the court the power (or a duty) to set aside or

reform the judgment for fraud on the court or on some other basis.

**II.**     **Rule 60 Motion**

    **A.**     **Rule 60(b)(6)**

The first issue the court must decide is whether Rule 60(b) may be used to provide relief

here.  Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order, or proceeding for the
> following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence,
> could not have been discovered in time to move for a new trial

under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic),
misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is
based on an earlier judgment that has been reversed or vacated; or
applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion under Rule 60(b)(1), (2), or (3) must be brought no more than a

year after the entry of judgment; otherwise the motion must be brought "within a reasonable

time." Fed. R. Civ. P. 60(c)(1). The rule does not limit the court's power to "set aside a

judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

HealthSouth brought this motion to set aside the judgment pursuant to both Rule 60(b)(6)

("any other reason that justifies relief") and 60(d)(3) ("fraud on the court"). As a threshold

matter, Plaintiff argues that HealthSouth does not have standing to bring a motion under Rule

60(b), because it is not a party. As the Second Circuit has noted, however, "several circuit courts

have permitted a non-party to bring a Rule 60(b) motion . . . when its interests are strongly

affected . . . ." Grace v. Bank Leumi Trust Co. of New York, 443 F.3d 180, 188 (2d Cir. 2006)

(setting aside judgment as void pursuant to Rule 60(b)(4)).

In Grace, the court vacated a consent judgment under circumstances similar to those here,

holding that "where plaintiffs enter into a settlement agreement with a judgment-proof, *pro se*

defendant with the intent at the time of the settlement to collect from a third party that allegedly

received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for

a fraudulent conveyance action against the third party, the third party is 'strongly affected' by

the judgment and entitled to standing to bring a Rule 60(b) motion." Id. In Grace, as here,

"[t]here is the appearance that plaintiffs and defendants entered settlement negotiations with the

-5-

mutual intent of laying the burden of compensating plaintiffs squarely on non-party movants. . . .
We thus carve out an exceedingly narrow exception to the well-established rule that litigants,
who were neither a party, nor a party's legal representative to a judgment, lack standing to
question a judgment under Rule 60(b)." Id. at 189.  Consistent with Grace, the court finds that
HealthSouth has standing under Rule 60(b).

Nonetheless, Plaintiff argues that HealthSouth is not entitled to relief under Rule 60(b)(6)
("any other reason that justifies relief") because the motion is more properly brought under Rule
60(b)(3) ("fraud . . . misrepresentation, or misconduct by an opposing party").  Relief under Rule
60(b)(3) is subject to a one-year time limit, which is not met in this case.  A Rule 60(b)(6)
motion has no precise time limit, but must be brought within a "reasonable time."  Thus, whether
this motion is properly characterized as arising under Rule 60(b)(3) or 60(b)(6) is significant.
The Court of Appeals for the Sixth Circuit addressed the appropriate use of Rule 60(b)(6) as
follows:

> This Circuit adheres to the view that courts should apply Rule
> 60(b)(6) only in exceptional or extraordinary circumstances which
> are not addressed by the first five numbered clauses of the Rule . . .
> .  Notwithstanding the extraordinary nature of relief under
> 60(b)(6), district courts may employ subsection (b)(6) as a means
> to achieve substantial justice when "something more" than one of
> the grounds contained in Rule 60(b)'s first five clauses is present.
> Accordingly, a motion made under Rule 60(b)(6) is addressed to
> the trial court's discretion which is "especially broad" given the
> underlying equitable principles involved.

Hopper v. Euclid Manor Nursing Home, Inc., 867 F.2d 291, 294 (6th Cir. 1989).

HealthSouth is contending that the parties engaged in fraud and collusion, which is
covered by Rule 60(b)(3) and does not constitute "exceptional or extraordinary circumstances
which are not addressed by the first five numbered clauses of the Rule." Id.  HealthSouth cannot

-6-

avoid the one-year time limit of Rule 60(b)(3) by framing the motion as one arising under Rule 60(b)(6). Accordingly, Rule 60(b)(6) does not provide an avenue for relief under these circumstances.

**B.      Rule 60(d)(3)**

That leaves Rule 60(d)(3), "fraud on the court," which the Sixth Circuit has noted is a "somewhat nebulous concept." Demjanjuk v. Petrovsky, 10 F.3d 338, 351 (6th Cir. 1993). "Fraud upon the court should ... embrace only that species of fraud which does or attempts to subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." Id. (citation omitted).

"Fraud on the court is conduct: 1) on the part of an officer of the court; 2) that is directed to the judicial machinery itself; 3) that is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; 5) that deceives the court." Workman v. Bell, 227 F.3d 331, 336 (6th Cir. 2000). HealthSouth argues that the parties here engaged in fraud on the court by presenting the consent judgment without disclosure of the accompanying settlement agreement. To be sure, corporations do not generally present their settlement agreements to the court for approval. This situation is different from the routine settlement in that (1) the consent judgment stated that Horizon "shall pay" a significant damages figure ($376 million) that the parties admittedly did not negotiate; (2) contrary to the consent judgment, the settlement agreement expressly stated that Plaintiff would not enforce the judgment (except for $300,000) against Horizon or

Meadowbrook; and (3) the parties apparently entered into the consent judgment with the intent

that Plaintiff would only attempt to enforce it in a fraudulent conveyance action against a non-

party, HealthSouth.

      The court was unaware of these facts and considered the consent judgment the product of

the adversarial process.  In other contexts, courts have found that judgments of this sort require

heightened scrutiny:

> [A] stipulated judgment . . . which is coupled with a covenant not
> to execute against the insured brings with it a high potential for
> fraud or collusion.  With no personal exposure the insured has no
> incentive to contest liability or damages.  To the contrary, the
> insured's best interests are served by agreeing to damages in any
> amount as long as the agreement requires the insured will not be
> personally responsible. . . .

Continental Cas. Co. v. Westerfield, 961 F. Supp. 1502, 1505 (D. N.M. 1997) (citation omitted).

Collusion may be found "where the evidence demonstrates an absence of conflicting interests –

the 'lack of opposition between a plaintiff and an insured [defendant] that otherwise would

assure that the settlement is the result of hard bargaining.'" Id. at 1506.  Further, collusion may

be found even in the absence of an intentional misrepresentation to the court: "Such a suit is

collusive because it is not in any real sense adversary.  It does not assume the 'honest and actual

antagonistic assertion of rights' to be adjudicated – a safeguard essential to the integrity of the

judicial process." Id. (quoting United States v. Johnson, 319 U.S. 302, 304-305 (1943) (emphasis

added)).

      Under the circumstances of this case, the factors required to find "fraud on the court" are

met.  The consent judgment was presented by parties' counsel, who are officers of the court.

The consent judgment stated that Horizon "shall pay" $376 million to Plaintiff; the consent

-8-

judgment did not disclose the Plaintiff agreed not to enforce the full amount of the (non-negotiated) judgment amount against Horizon. The failure to disclose these facts to the court caused a distortion of the judicial process:

> Lawyers seeking entry of a settlement consent judgment have a special obligation to ensure that the court is fully and accurately informed of all material facts related to the proffered order. Where, as here, the lawyers, without any deceitful intent, fail to do so, and where the judge therefore proceeds on a mistaken, but invited assumption, the result is a distortion of the judicial process, which cries out for correction.

Spence-Parker v. Maryland Ins. Group, 937 F. Supp. 551, 563 (E.D. Va. 1996) (setting aside consent judgment on collateral attack because it was non-adversarial).

The parties contend that they did not intend to deceive the court; however, the failure to disclose material facts resulted in this court placing its imprimatur on a consent judgment, the primary purpose of which was to ambush a non-party, HealthSouth. That HealthSouth may not be a completely innocent party is beside the point. The integrity of the court and the judicial process are impugned when the parties do not wholeheartedly engage in an adversarial manner and disclose all material facts.

Non-party HealthSouth's Motion is GRANTED. General Medicine and Horizon will consult each other and this court's case manager to determine what further proceedings are appropriate.

**SO ORDERED.**

s/John Corbett O'Meara
United States District Judge

Date: May 21, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 21, 2009, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager